LAW OFFICES OF RONALD A. MARRON, APLC
RONALD A. MARRON, ESQ. [SBN 175650]
ron.marron@gmail.com
MAGGIE K. REALIN, ESQ. [SBN 263639]
maggie.realin@yahoo.com
SKYE RESENDES, ESQ. [SBN 278511]
skyer@san.rr.com
3636 Fourth Avenue, Ste. 202
San Diego, CA 92103
Telephone: 619-696-9006
Facsimile: 619-564-6665

Filed
APR 1 9 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-filing
ADR

*Attorneys for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI GRAY, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GERBER PRODUCTS COMPANY; NESTLE USA, INC.,<br><br>Defendants. | CASE NO.<br>CV12-01964 LB<br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT [CIV. CODE §§ 1750, *et. seq.*]; and**<br><br>2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200, *et. seq.*]**<br><br>3. **VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, [N.J.S.A. §§ 56:8-1, *et seq.*]**<br><br>4. **VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT [MCLA §§ 445.903, *et seq.*]**<br><br>DEMAND FOR JURY TRIAL |

1

Plaintiff Brandi Gray ("Plaintiff"), by and through her attorneys of record, brings this action on behalf of herself, and all others similarly situated, and the general public, against defendant Gerber Products Company and Nestle ("Defendants"). Plaintiff alleges the following upon her own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of her counsel:

## JURISDICTION AND VENUE

1.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, as a matter in controversy that exceeds the sum of $5,000,000.00, exclusive of costs and interest, and a class action where Plaintiff, a member of the class, is from a different state than Defendants. On information and belief, more than two-thirds of the members of the class are citizens of a state different from the Defendants. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.  Personal jurisdiction derives from the fact that the Defendant conducts business within the State of California and within this judicial district.

3.  Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendants:

    (i)   are authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

    (ii)  do substantial business in this district;

    (iii) advertise to consumers residing in this district; and

    (iv)  are subject to personal jurisdiction in this district.

## PARTIES

4.  At all times relevant to this matter, Defendant Gerber Products Company was a corporation organized and existing under the laws of Michigan, with its principal place of

2

business at 445 State Street, Freemont Michigan, 49413, and additional offices located at 12 Vreeland Road, Florham Park, New Jersey 07932

5. At all times relevant to this matter, Defendant Nestle USA, Inc. was a corporation organized and existing under the laws of Delaware, with its principal place of business located at 800 N. Brand Boulevard, Glendale, CA 91203, and is a subsidiary of Nestle S.A. in Vevey, Switzerland.

6. At all times relevant herein, Defendants advertised, marketed, distributed, and sold the at-issue Products (as further defined herein) to consumers in the United States, transacting business in this district and throughout the United States.

7. At all times relevant to this matter, Plaintiff resided, and continues to reside, in California. During the Class period, Plaintiff was exposed to and saw Defendants' claims about the Products, purchased Defendants' Products in reliance on those claims, and suffered injury in fact as a result of Defendants' unfair competition as described herein.

## INTRADISTRICT ASSIGNMENT

8. This civil action arises out of the acts and omissions of Defendants which took place in Alameda County, in that Plaintiff purchased Defendants' products in Alameda County and was subjected to Defendants' unlawful acts in that county. Accordingly, pursuant to N.D. Cal. Civ. L.R. 3-2(c), the action should be assigned to the San Francisco/Oakland Division.

## INTRODUCTORY FACTS

9. This is a consumer protection class action, addressing the following products (collectively, the "Products"):

///
///
///
///
///
///

3

*Gray v. Gerber Products Co. and Nestle USA, Inc.*
CLASS ACTION COMPLAINT

Good Start Gentle Formula (Stage = Birth):

Powder (23.2 ounce and 12.7 ounce), Concentrated Liquid, Ready to Feed, and Convenience Pack varieties

  

Good Start Protect Infant Formula (Stage = Birth):

Powder variety



Gerber DHA & Probiotic Single Grain Cereal (Stage = Supported Sitter):

Rice and Oatmeal varieties

 

*Gray v. Gerber Products Co. and Nestle USA, Inc.*
CLASS ACTION COMPLAINT

Good Start 2 Gentle Formula (Stage = Crawlers):

Powder, Concentrated Liquid, Ready to Feed, and Convenience Pack varieties



Good Start 2 Protect Formula (Stage = Crawlers):

Powder, Concentrated Liquid, Ready to Feed, and Convenience Pack varieties



10. This action addresses the advertisements Defendants have made and continue to make about their infant and toddler baby food with probiotics and prebiotics, intended for children 0 years of age and up. Gerber's "Birth" stage is intended for infants 0 – 12 months of age; the "Supported Sitter" stage is intended for infants 6 to 12 months old; and the "Crawler" stage is intended for toddlers that have begun to crawl, pull themselves up, and attempt to self-feed with their own fingers, all developmental milestones that occur in children less than 2 years of age (Crawler stage products are labeled 0 – 24 months).

11. Through Defendants' marketing campaign and package labeling, Defendants claim that the Products can and should be used for healthy baby growth.

12. Defendants also claim the Products are specially formulated for infants' and toddlers' developmental and nutritional needs. For example, Defendants' Gerber web site states:

"The best-known infant formula marketing guidelines are the International Code of Marketing of Breastmilk Substitutes, developed by the World Health Organization in 1981. These guidelines are known as the WHO Code. We abide by the Code in every country where it is law, and follow the aim of the Code where it is not, such as in the United States."

13. According to the www.babymilk.nestle.com, "The WHO recommends exclusive breastfeeding for the first 6 months and Nestlé supports this global public health recommendation. As such, we do not market any complementary foods or drinks, including infant cereals and baby foods, for use before 6 months of age unless mandatorily required to do so by national regulations."

14. In 2007, Defendants introduced the first infant formula containing probiotics in the United States. Since 2007, Defendants have manufactured, labeled, marketed, distributed, and sold the Products to the public throughout the United States, using various media as described herein.

15. Defendants sell the Products at a premium of approximately $1.00 per 8 ounces for its probiotic-containing Products over its regular, non-probiotic cereals and formulas.

16. During the Class Period defined herein, Plaintiff purchased the Gerber Probiotic Products. Specifically, Plaintiff purchased the Products from February 2009 to February 2010, purchasing approximately 15 cans of Good Start Formula per month, at the Albertsons in Hayward; and the WalMart and Target in Stockton. In deciding to purchase the Products, Plaintiff relied on the probiotic and DHA labeling claims such as: "Gerber's NUTRIPROTECT blend for infant cereals provides essential vitamins and minerals like Iron, Zinc and Vitamins B & E"; "18mg of DHA per serving to help support brain and eye development"; and "Contains beneficial probiotic cultures, BIFIDUS BL™, that help support a healthy immune system."

17. Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the United States, to halt the dissemination of Defendants' deceptive and false advertising message about the Products, and to correct the false and misleading perception it has created in the minds of consumers who have purchased the Products. Plaintiff alleges violations

6

1  of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the
2  California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the Michigan
3  Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903 *et seq.*, and the New Jersey
4  Consumer Fraud Act, N.J.S.A. §§ 56:8-1 *et seq.*

## SPECIFIC MISREPRESENTATIONS,
## MATERIAL OMISSIONS, AND DECEPTIVE FACTS

18. Defendants' advertising claims about the Products are and have been the subject of an extensive and comprehensive, nationwide marketing campaign since 2007 and continuing today.

19. Defendants primarily advertise and promote the Products for sale through the front of pack and back of pack labeling claims.

20. Defendants also use to advertise and promote the Products for infants and toddlers: the web site, www.gerber.com; television commercials; Gerber's "Start Healthy, Stay Healthy" campaign; and have partnered with Houseparty.com to generate house parties where the consumer/mom host distributes free baby products and coupons for the formula Products.

21. Defendants have advertised their probiotic Products through a television advertisement with the slogan "Welcome to the Gerber Generation." The ad shows a baby looking in wonder at scientific formulations. With a wave of the baby's hand, the word "probiotics" flows into a tin of Good Start formula. The voice-over makes a hard sell about how Gerber is supposed to have made a scientific breakthrough and how "the immune supporting probiotics like those found in breast milk can now be found in Gerber Good Start Protect Plus."

22. On Defendants' www.gerber.com web site, the following advertising information is provided to consumers about probiotics in the Products: "Good nutrition is important. But what we eat also can provide health benefits beyond basic nutrition. One example is the regular consumption of beneficial probiotic cultures, also called 'probiotics.' . . . [P]robiotics have been added to formula to help support Baby's healthy immune system. . . . Everyone's digestive tracts, including babies', naturally contain many different types of bacteria, or cultures. Many of these

7

are important to help keep our bodies healthy. Consuming beneficial probiotic cultures is one way to encourage a favorable balance of the cultures in the digestive tract. . . . One important benefit is supporting a healthy immune system. Probiotics can provide this benefit by increasing your baby's levels of key antibodies. About 70% of the cells of the immune system are found in the digestive tract, which makes it a central part of the body's immune system. So another way probiotics help support your baby's healthy immune system is by helping to maintain a healthy balance of cultures in her digestive tract, which supports the natural protective environment found there."

23. Gerber DHA & Probiotic Cereal is advertised with the following labeling claims: "Gerber's NUTRIPROTECT blend for infant cereals provides essential vitamins and minerals like Iron, Zinc and Vitamins B & E"; "18mg of DHA per serving to help support brain and eye development"; "Contains beneficial probiotic cultures, BIFIDUS BL™, that help support a healthy immune system." The ingredients list for DHA & Probiotic Cereal lists only the following probiotic: "B LACTIS CULTURES." The only DHA in the product is from "tuna oil."

24. Good Start Gentle Formula (Stage = Birth) is advertised with the following labeling claims: "For Complete Nutrition & Easy Digestion"; "Nutri Protect"; "Complete Nutrition to Support Healthy Growth; Unique Comfort Proteins™ for Easy Digestion"; "Prebiotics for Digestive Health"; "DHA and ARA for Brain and Eye Development"; and "Specially Made with Nutrients Found in Breastmilk."

25. Good Start Protect Infant Formula (Stage = Birth) is advertised with the following labeling claims: "For Complete Nutrition, Easy Digestion & Advanced Immune Support"; "Immuni Protect Probiotic"; "Unique Comfort Proteins™ for Easy Digestion"; "DHA and ARA for Brain and Eye Development"; "Complete Nutrition & Bifidus BL for Advanced Immune System Support"; and "Specially Made with Nutrients Found in Breastmilk."

26. Good Start 2 Gentle Formula (Stage = Crawlers) is advertised with the following labeling claims: "For Complete Nutrition & Easy Digestion"; "Nutri Protect"; "Complete

8

*Gray v. Gerber Products Co. and Nestle USA, Inc.*
CLASS ACTION COMPLAINT

Nutrition to Support Healthy Growth; Unique Comfort Proteins™ for Easy Digestion"; "Prebiotics for Digestive Health"; "DHA & ARA for Brain and Eye Development"; "A Nutritious Alternative to Cow's Milk"; and with an image of a heart.

27. Good Start 2 Protect Formula (Stage = Crawlers) is advertised with the following labeling claims: "For Complete Nutrition, Easy Digestion & Advanced Immune Support"; "Immuni Protect Probiotic; Complete Nutrition & Bifidus BL for Advanced Immune System Support"; "Unique Comfort Proteins™ for Easy Digestion"; "DHA & ARA for Brain and Eye Development"; "A Nutritious Alternative to Cow's Milk"; and with an image of a heart.

28. Defendants' labeling and advertising claims are false and deceptive because they imply the Products are healthier and more nutritious than other, less costly baby food products that do not contain prebiotics and probiotics.

29. Defendants' labeling and advertising claims are false and deceptive because they imply the Products are healthier and more nutritious than other, less costly baby food products that do not contain DHA & ARA.

30. Defendants' labeling and advertising claims are further false and deceptive because the use of probiotics and prebiotics in children 2 years of age and younger has not been sufficiently substantiated, and most scientists concur that probiotics/prebiotics use can in fact harm developing children.

31. Defendants' labeling and advertising is further false and misleading because even for children above 2 years of age, there is no credible scientific evidence to prove that the use of probiotics or prebiotics is necessary or helpful to children, and their use may in fact harm children.

32. Defendants' labeling and advertising claims are further false and deceptive because there is no credible scientific evidence that baby food containing DHA & ARA has any effect on brain or eye development.

33. Defendants' labeling and advertising is further false and misleading because the terms, "BIFIDUS BL™" and "B LACTIS CULTURES," do not define what strain of probiotics

1  is present in the Products, and the scientific research on probiotic/prebiotic efficacy requires
2  strain-specific testing.

3      34. Defendants' labeling and advertising is further false and misleading because there
4  is no credible scientific evidence that the probiotics/prebiotics in the Products "helps support a
5  healthy immune system."

6      35. Defendants' labeling and advertising is further false and misleading because there
7  is no credible scientific evidence that the probiotics/prebiotics in the Products provide
8  "Advanced Immune Support," or "Advanced Immune System Support."

9      36. Defendants' labeling and advertising is further false and misleading because the
10 claim "Immuni Protect Probiotic" implies that the type of probiotic in the Products is somehow
11 superior to other types of commercially available probiotics/prebiotics in providing immune
12 support in a developing child, none of which is scientifically substantiated.

13     37. Defendants' labeling and advertising is further false and misleading because there
14 is no credible scientific evidence that the probiotics/prebiotics in the Products provides
15 "Digestive Health."

16     38. Defendants' labeling and advertising is further false and misleading because there
17 is no credible scientific evidence that the "DHA & ARA" in the Products have any effect on
18 "Brain and Eye Development."

19     39. Defendants' labeling and advertising is further false and misleading because the
20 image of a heart on the Products implies some type of heart-healthy benefit arising out of use of
21 the baby foods.

22     40. In addition, Defendants' labeling and advertising is violates the federal Food,
23 Drug, and Cosmetic Act ("FDCA"), and its implementing regulations for foods intended
24 specifically for children under 2 years of age.

25     41. The nutrient information for foods intended for children under the age of 2 years
26 are found in section 403(r)(1)(A) of the FDCA [21 U.S.C. § 343(r)(1)(A)], with specific nutrient
27 claims appearing at sections 101, 105, or 107 of FDA regulations. 21 CFR § 101.13(b)(3).

28

10

1  Defendants have violated 21 C.F.R. § 101.14 and other relevant provisions of the FDCA, such as
2  the prohibition against false and misleading advertising of a food or dietary supplement, 21
3  U.S.C. § 343(a).

4      42.    To induce consumers to purchase the Products, Defendants have disseminated, or
5  caused to be disseminated, advertisements for the Products, touting the benefits of probiotics and
6  prebiotics for children under the age of 2.

## CLASS ACTION ALLEGATIONS

8      43.    The Class is defined as:

> All persons in the United States who purchased one or more of the Products from
> January 1, 2007 to the present ("Class Period") for personal or household use, and
> not for resale or distribution purposes.

*Or, in the alternative,*

> All persons who purchased the Products for personal or household use, and not
> for resale or distribution purposes in any state that has consumer protection
> statutes which do not materially differ from the consumer protection statutes of
> California, New Jersey, and/or Michigan, from January 1, 2007 to the present.

*And/Or, in the alternative,*

> All persons who purchased the Products in California, New Jersey or Michigan,
> from January 1, 2007 to the present, for personal or household use, and not for
> resale or distribution purposes.

44. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, assigns, shareholders, marketing consultants, licensees, distributors, and agents. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45. The persons in this class are so numerous that the joinder of all such persons is

impracticable

46. Common questions of fact and law affecting the Class and central to resolution of their claims include:

(a) Whether Defendants conveyed a class-wide message that the Products contribute to immunity, digestive health, brain development, eye development, and overall nutrition for infants and toddlers;

(b) Whether Defendants had adequate substantiation for their claims prior to making them;

(c) Whether Defendants' claims were material to a reasonable consumer;

(d) Whether Defendant's claims are false or, even if literally true, whether they are likely to deceive the public;

(e) Whether Defendants omitted any material information in making the claims described herein; and

(f) The proper method and measure of the Class's damages.

These common questions of law and fact predominate over questions that affect only individual class members.

47. Plaintiff's claims are typical of those of the Class and they will fairly and adequately represent the interests of the Class. Plaintiff will serve as adequate class representative. Plaintiff's counsel is highly experienced in complex consumer class action litigation, and will vigorously represent the best interests of the class. Plaintiff has no adverse or antagonistic interests to those of the Class.

48. Class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Class's claims are manageable.

49. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be

misled.

50. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### For Violations of the California Consumers Legal Remedies Act,

### California Civil Code §1750 *et seq.*, on Behalf of Plaintiff and the Class

51. Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

52. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"). Plaintiff is a consumer as defined by California Civil Code § 1761(d). The Products are goods within the meaning of the CLRA.

53. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by Section 1770(a), in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

(a) Representing that the Products have characteristics, uses or benefits which they do not have;

(b) Representing that the Products are of a particular standard, quality or grade if they are of another;

(c) Advertising the Products with intent not to sell them as advertised;

(d) Representing that the Products have been supplied in accordance with a previous representation when they do not.

54. Defendants violated the CLRA by making the representations and claims for the Products, as described above, when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

55. Plaintiff and other members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of the Products.

56. Plaintiff and other members of the Class were deceived by Defendants'

13

representations about the quality and attributes of the Products, including but not limited to the nutritional consequences of using the Products to create immunity protection, digestive health, brain and eye development, heart healthiness, when the Products have no ability to cause any such consequences.

57. Plaintiff and other members of the Class were deceived by Defendants' representations about the Products' actual ability to cause, stimulate or otherwise not deter from healthy growth in children and that the Products were specially formulated with child age in mind, so as not to harm children of the designated milestone ages.

58. Plaintiff and other Class members would not have purchased the Products had they known Defendants' claims were either unfounded or untrue, and the true nature of the Products.

59. Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of defendant.

## SECOND CAUSE OF ACTION

**Unlawful Business Acts and Practices in Violation of California Business & Professions Code Section 17200, *et seq.*, on Behalf of Plaintiff and the Class**

60. Plaintiff repeats, re-alleges and reincorporates the allegations contained in the paragraphs above, as is fully set forth herein.

61. Business & Professions Code Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unlawful business acts or practices by, among other things, making misrepresentations and omissions of material facts, as set forth more fully above, and violating, among other statutes, Civil Code, Sections 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code, Section 17200 *et seq.*, Health & Safety Code Section 110765, the FDCA, and the common law.

62. Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to

14

1  this date.

2  63. Defendants' acts, omissions, misrepresentations, practices and non-disclosures as
3  alleged herein also constitute "unfair" business acts and practices within the meaning of Business
4  & Professions Code Section 17200 *et seq*. in that its conduct is substantially injurious to
5  consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the
6  gravity of the conduct outweighs any alleged benefits attributable to such conduct.

7  64. As stated in this Complaint, Plaintiff alleges violations of consumer protection,
8  unfair competition and truth in advertising laws resulting in harm to consumers. Plaintiff asserts
9  violations of the public policy of engaging in false and misleading advertising, unfair
10 competition and deceptive conduct towards consumers.

11 65. There were reasonably available alternatives to further Defendants' legitimate
12 business interests, other than the conduct described herein.

13 66. Defendants' claims, nondisclosures and misleading statements, as more fully set
14 forth above, were also false, misleading and/or likely to deceive the consuming public within the
15 meaning of Business & Professions Code, Section 17200, and actually *did* deceive Plaintiff.

16 67. Defendants' labeling, website and other advertisements, as described herein, also
17 constitute unfair, deceptive, untrue and misleading advertising.

18 68. Defendants' conduct caused and continues to cause substantial injury to Plaintiff
19 and the other Class members. Plaintiff has suffered injury in fact as a result of Defendants'
20 unfair conduct.

21 69. Defendants have thus engaged in unlawful, unfair and fraudulent business acts
22 and practices and false advertising, entitling Plaintiff to injunctive relief against Defendants, as
23 set forth in the Prayer for Relief.

24 70. Additionally, pursuant to Business & Professions code, Section 17203, Plaintiff
25 seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and
26 fraudulent business practices and requiring Defendants to engage in a corrective advertising
27 campaign.

28

15

## THIRD CAUSE OF ACTION

### For Violations of the New Jersey Consumer Fraud Act,
### N.J.S.A. § 56:8-1, *et seq.*, on Behalf of Plaintiff and the Class

71. Plaintiff repeats, re-alleges and reincorporates the allegations contained in the paragraphs above, as is fully set forth herein.

72. At all times relevant to this action, there was in full force and effect the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1 et seq., which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

73. N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . Whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

74. At all relevant times, Plaintiff, the other Class members, and Defendants were "persons" within the meaning of N.J. Rev. Stat. § 56:8-1.

75. The Products manufactured, marketed, and sold by Defendants are merchandise within the meaning of the NJCFA, and Plaintiff and the other Class members are consumers within the meaning of the NJCFA and entitled to the statutory remedies made available therein.

76. Defendants violated and continue to violate the NJCFA by representing that their Products have characteristics, uses, and benefits which they do not have and advertising the Products to have characteristics, uses, and benefits which Defendants know the Products do not have.

77. Defendants violated the NJCFA by advertising their Products in the manner(s) described above, when they knew, or should have known, that those representations and advertisements were unsubstantiated, false, and/or misleading.

78. Defendants intended that Plaintiff and the other members of the Class would rely on their deception by purchasing their Products, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the NJCFA.

79. Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and/or deceptive business practices within the meaning of the NJCFA.

80. Defendants' conduct is malicious, fraudulent, and wanton, and provides misleading information that their Products are healthier and more nutritious that the other, less expensive products on the market, when in fact they are not.

81. Defendants' conduct has proximately caused damage to Plaintiff and the other Class members, in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, in an amount to be proven at trial.

82. Had Defendants disclosed all material information regarding the Products in its advertising and marketing, Plaintiff and the Class would not have purchased the Products or would have paid less for the Products.

## FOURTH CAUSE OF ACTION

**Violations of the Michigan Consumer Protection Act,**

**Mich. Comp. Laws Ann. §§ 445.903 *et seq.*, on Behalf of Plaintiff and the Class**

83. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

84. Plaintiff is a "person" as defined in Mich. Comp. Laws Ann. § 445.902(c).

85. The transactions complained of herein constitute "trade or commerce" as defined in Mich. Comp. Laws Ann. § 445.902(d).

86. In the course of the transactions which are the subject of this lawsuit, Defendants engaged in the following unfair and deceptive acts, methods or practices:

    i. Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods, Mich. Comp. Laws Ann. § 445.903(1)(a)

    ii. Using deceptive representations in connection with the goods, Mich. Comp. Laws Ann. § 445.903(1)(b);

    iii. Representing that the goods have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have, Mich. Comp. Laws Ann. § 445.903(1)(c);

    iv.    Representing that the goods are of a particular standard, quality, or grade, though they are of another, Mich. Comp. Laws Ann. § 445.903(1)(e);

    v.    Advertising or representing goods with intent not to dispose of those goods as advertised or represented, Mich. Comp. Laws Ann. § 445.903(1)(g);

    vi.    Representing that because of some defect in a consumer's home the health, safety, or lives of the consumer or his or her family are in danger if the product is not purchased, when in fact the defect does not exist or the product would not remove the danger, Mich. Comp. Laws Ann. § 445.903(1)(l);

    vii.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, Mich. Comp. Laws Ann. § 445.903(1)(s);

    viii.    Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold, Mich. Comp. Laws Ann. § 445.903(1)(z);

    ix.    Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, Mich. Comp. Laws Ann. § 445.903(1)(bb); and

    x.    Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner, Mich. Comp. Laws Ann. § 445.903(1)(cc).

87.    The above-described conduct violated the Michigan Consumer Protection Act, specifically but not limited to Mich. Comp. Laws Ann. § 445.903 and the sub-paragraphs contained therein.

88. These violations were not due to bona fide error, but were the result of intentional, knowing and willful acts by Defendants.

89. As a result of Defendants' actions, Plaintiff the members of the Class have suffered a loss within the meaning of the Michigan Consumer Protection Act are entitled to statutory damages and fees as provided in the Act, Mich. Comp. Laws Ann. § 445.911.

\* \* \*

90. As a result of Defendants' violations of the foregoing state consumer protection statutes, Plaintiff and the other members of the Class are entitled to compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and all other similarly situated and the general public, prays for a judgment against Defendants on each cause of action:

A. An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of class notice;

B. An order awarding declaratory and injunctive relief as permitted by law or equity, including; enjoining defendant from continuing the unlawful practices as set forth herein;

C. An order compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products;

D. An order awarding Plaintiff compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages under New Jersey Consumer Fraud Act N.J.S.A § 56:8-1, *et seq.*

E. An order awarding attorneys' fees and costs to Plaintiff under New Jersey Consumer Fraud Act N.J.S.A § 56:8-1, *et seq.*;

F. An order providing for all other such equitable relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 19, 2012          THE LAW OFFICES OF RONALD A. MARRON, APLC

*[signature]*

RONALD A. MARRON
3636 Fourth Avenue, Suite 202
San Diego, CA 92103
Telephone: 619/696-9006
Facsimile: 619/564-6665

ATTORNEYS FOR PLAINTIFF